Andrew Rozynski, Esq. (NY# 5054465)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| DYLAN PANARRA<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>HTC CORPORATION;<br>HTC AMERICA, INC.;<br><br>　　　　　　Defendants. | **Civ. No. 20-6991**<br><br>**COMPLAINT** |

---

Plaintiff, Dylan Panarra, by and through his undersigned counsel, Eisenberg & Baum, LLP, hereby states his Complaint against Defendants:

**PRELIMINARY STATEMENT**

1.　The recent COVID-19 pandemic has changed the society. Among the important changes are the ever-growing dependence on virtual technology. From school classrooms to court trials, much of the societal activities operate on a virtual platform. Imbued with novelty and convenience, these new online and virtual technologies appear objective and beneficial to all. However, these benefits are not equally distributed throughout the society. Rather these technologies perpetuate systemic discrimination and injustice.

2.　Plaintiff Dylan Panarra ("Plaintiff" or "Mr. Panarra") is profoundly deaf and requires captioning to meaningfully access any visual content, such as videos, movies, video

games, and Virtual Reality ("VR") content. Mr. Panarra brings this action against Defendants for their failure to provide equal access to the Internet and the VR through their service "Viveport Infinity." Often described as the "Netflix of VR," Viveport Infinity is the first and only subscription service that provides unlimited VR content. However, Viveport Infinity's programs and content are not captioned, making them inaccessible to Mr. Panarra and the deaf and hard of hearing population. Plaintiff alleges that Defendants have failed to provide equal access to their Viveport Infinity service by refusing to make available closed captioned text for the deaf and hard of hearing—a feature that is necessary for such individuals to understand the audio portion of the VR content.

3.  By failing to provide captioning, Defendants deprived Mr. Panarra the benefits of their subscription service, which are afforded to hearing individuals. Such actions or inactions amount to unlawful discrimination against Mr. Panarra based on his disability of deafness.

4.  Based on Plaintiff's allegations herein, it is evident that Defendants failed to implement policies, procedures, and practices respecting the rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices, and implement policies and procedures that will ensure deaf and hard of hearing individuals a meaningful opportunity to fully and equally enjoy Defendants' programs and content.

5.  Plaintiff seeks declaratory, injunctive, and equitable relief; nominal, statutory, compensatory, and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful disability discrimination against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; the New York Civil Rights Law ("NYCRL"), N.Y.

Civ. Rights Law § 40, *et seq*. Because the Internet is a "place of public accommodation," denial of equal access to the Internet violates the laws above.

## THE PARTIES

6. Plaintiff Dylan Panarra is a profoundly deaf individual currently residing in Rochester, NY. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of federal and state civil rights laws. He requires materials to be in an accessible format—including captioning—to be able to participate in and receive the benefits of Defendants' online and VR content.

7. Defendant HTC Corporation is a leading electronics corporation located at No. 88, Section 3, Zhongxing Road, Xindian Dist., New Taipei City 231, Taiwan.

8. Defendant HTC America, Inc. is a Washington corporation located at 308 Occidental Avenue South, Suite 300, Seattle, Washington 98104. Its Registered Agent is Cogency Global Inc. with an address of 1780 Barnes Blvd SW, Tumwater, WA, 98512-0410. Defendant is a wholly owned U.S. based subsidiary of Defendant HTC Corporation.

## JURISDICTION & VENUE

9. The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants operate their nationwide subscription business on the Internet in this District, and has sufficient contacts to be subject to personal jurisdiction in this District. A substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

11. Virtual Reality ("VR") is

> the use of computer modeling and simulation that enables a person to interact with an artificial three-dimensional (3-D) visual or other sensory environment. VR applications immerse the user in a computer-generated environment that simulates reality through the use of interactive devices, which send and receive information and are worn as goggles, headsets, gloves, or body suits. In a typical VR format, a user wearing a helmet with a stereoscopic screen views animated images of a simulated environment. The illusion of "being there" (telepresence) is effected by motion sensors that pick up the user's movements and adjust the view on the screen accordingly, usually in real time (the instant the user's movement takes place). Thus, a user can tour a simulated suite of rooms, experiencing changing viewpoints and perspectives that are convincingly related to his own head turnings and steps. Wearing data gloves equipped with force-feedback devices that provide the sensation of touch, the user can even pick up and manipulate objects that he sees in the virtual environment.

Henry E. Lowood, *Virtual Reality*, Encyclopedia Britannica (September 2, 2020), http://www.britannica.com/technology/virtual-reality.

12. Defendants are one of the biggest electronics companies in the world.

13. Defendants operate an online VR subscription service called Viveport Infinity, often described as the Netflix of VR.

14. Just like Netflix, Viveport Infinity offers unlimited access to the thousands of VR content, including games, videos, and other apps and programs for $12.99 per month or $8.99 per month for an annual plan. Members get exclusive offers and more than $10,000 worth of critically acclaimed titles. What is Infinity, *Viveport Infinity*, https://www.viveport.com/infinity (last visited October 13, 2020).

15. Viveport Infinity is the only subscription service for VR content.

16. Closed captioning is a system that displays text on video content. With closed captioning, deaf and hard of hearing individuals have the opportunity to enjoy movies or videos by reading the captioned text.

17. Unlike Netflix that provides closed captions or subtitles for all its content, however,

Viveport Infinity does not offer subtitles or closed captions for many of its content.

18. Viveport Infinity offers an opportunity for people to have access to thousands of VR content at any time in their homes. By failing to provide captioning, however, Viveport Infinity is closing deaf and hard of hearing individuals out of this opportunity, increasing the sense of isolation and stigma.

19. Plaintiff Dylan Panarra is a profoundly deaf individual. Because of his disability of deafness, Mr. Panarra requires closed captions to meaningfully access and understand any video content that has audio portions. Just as buildings without ramps bar people who use wheelchairs, online or video content without captions excludes Mr. Panarra.

20. Mr. Panarra has been a big fan of video games all his life. He owns Oculus Rift, a VR headset made by Oculus. He loves playing VR content and video games.

21. Viveport Infinity is compatible with Oculus Rift.

22. Defendants' continued failure to provide closed captioning for many of Viveport Infinity content makes it inaccessible to Mr. Panarra and other deaf and hard of hearing individuals.

23. Because VR and VR video games are such a big part of his life, it is very important for Mr. Panarra to have captions available on Viveport Infinity to understand and follow the audio portions of various VR content. However, because Defendants do not offer closed captioning or subtitles for many of its programs and content on Viveport Infinity, Mr. Panarra cannot fully and equally enjoy their services.

24. Defendants deny Mr. Panarra the full and equal benefits of their programs and services on Viveport Infinity.

25. Upon information and belief, Defendants have the ability to caption all of Viveport Infinity content just like Netflix that captions all of its content.

26. Upon information and belief, Defendants are not planning to provide captioning for all of the content on Viveport Infinity.

27. Based on these facts, Defendants have failed to implement policies, procedures, and practices respecting the rights and needs of deaf and hard of hearing individuals.

28. Based on these facts, Defendants have failed to implement policies, procedures, and practices ensuring that the programs and content that they create, produce, and/or provide are accessible to deaf and hard of hearing individuals.

29. Defendants' willful and knowing action and/or inaction of continued intentional discrimination against Mr. Panarra cause him to suffer from violation of his civil rights.

30. While Viveport Infinity provides more access to entertainment to the general public, it is yet another barrier to people who are deaf and hard of hearing. VR and video games are great pastime for all Americans. Because of Defendants' unlawful conduct, Plaintiff cannot enjoy VR and video games and cannot share the experience with their families or friends. The lack of captions increases the sense of isolation and stigma for the deaf and hard of hearing.

31. Plaintiff has standing because he has suffered an injury that this lawsuit will redress. Mr. Panarra has not subscribed to Viveport Infinity because Defendants have failed to provide closed captioning on its VR content. Mr. Panarra does not have access to the unparalleled large selection of VR content on Viveport Infinity that Defendants provide to hearing individuals. If Defendants were to provide closed captioning on the VR content for Viveport Infinity, Plaintiff's injury would be cured and he would subscribe to Viveport Infinity.

32. Defendants' failure to provide Mr. Panarra with equal access to its Viveport Infinity service has caused him harm on the basis of his disability. Defendants' denial of accessible services for him isolates him from the rest of the video game players and VR users regarding the latest VR

trends and issues. This isolation stigmatizes him and causes him unnecessary frustration.

33. Mr. Panarra has also suffered emotional distress in the form of frustration, anxiety, humiliation, loss of enjoyment, and anger because of Defendants' failure to caption their content and Defendants' deliberate indifference to his accommodation needs.

34. Plaintiff does not have to engage in the "futile gesture" of purchasing a subscription when he has actual knowledge that he will have inferior, ineffective access to the services and privileges that Defendants provides subscribers. 42 USC § 12188(a).

35. In the future, Mr. Panarra would like to and intends to use Viveport Infinity if it was fully accessible.

36. Defendants' conduct constitutes an ongoing and continuous violation of the law. Defendants have failed to take any prompt and equitable steps to remedy its discriminatory conduct. Unless restrained from doing so, Defendants will continue to so violate the law. Their conduct has caused and will continue to cause Plaintiff injury. Plaintiff has no adequate remedy at law for the injuries they suffer and will continue to suffer. Thus, Plaintiff is entitled to injunctive relief.

## CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

37. Plaintiff repeats and realleges all preceding paragraphs in support of the claim.

38. At all times relevant to the action, Title III of the ADA, 42 U.S.C. § 12181, et seq., has been in full force and effect and has applied to Defendant's conduct.

39. Defendants own, lease, and/or operate a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7) ("place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishments").

40. At all times relevant to the action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the

meaning of the ADA, 42 U.S.C. § 12102(2).

41. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

42. Title III of the ADA provides that "[i]t shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

43. Title III of the ADA provides that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

44. Title III of the ADA provides that "[i]t shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(iii).

45. Federal regulations implementing Title III of the ADA provide that "[a] public

accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

46. Title III of the ADA mandates that public accommodations "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

47. Pursuant to Title III of the ADA, Defendants have an affirmative duty to provide accommodations in the form of captioning for Mr. Panarra so that he may enjoy the benefits of Defendants' services, specifically their live sporting events and their pre-recorded programs, most of which are only accessible online.

48. Because Defendants provide captions to only a limited number of Viveport Infinity content, Plaintiff does not have "unlimited" access to the content like hearing individuals. Viveport Infinity is a service of Defendants which takes place on the Internet, a place of public accommodation, and violates the ADA Title III mandate to provide "full and equal enjoyment."

49. The ADA and its regulations specifically instruct that the type of auxiliary aid or service provided shall be based on the "method of communication used by the individual, the nature, length, and complexity of the communication involve, and the context in which the communication is taking place," rather than the affordability of the auxiliary aid or service. 28 C.F.R. §36.303(c)(1)(ii).

50. Modifying Defendants' policies and providing closed captions as auxiliary aids and services to make Viveport Infinity content accessible to deaf and hard of hearing individuals would not fundamentally alter the nature of their business, nor would it pose an undue burden to Defendants.

51. Defendants discriminated against Plaintiff, on the basis of his disability, in violation of Title III of the ADA and its implementing regulations.

52. As set out above, injunctive relief is warranted to ensure that Defendants' actions will not recur with Plaintiff and/or other deaf persons.

53. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1), and/or common law.

**CLAIM II: VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW**

54. Plaintiff repeats and re-alleges all preceding paragraphs in support of the claim.

55. At all times relevant to the action, the New York Human Rights Law, Article 15 of the New York Executive Law § 290, et seq. has been in full force and effect and has applied to Defendants' conduct.

56. At all times relevant to the action, Plaintiff has had substantial impairments to the major life activities of hearing and speaking and has been a qualified individual with a disability within the meaning of New York Executive Law § 292(21).

57. At all times relevant to the action, Defendants have been places of public accommodation within the meaning of N.Y. Exec. L. § 292(9). Viveport Infinity is a service of Defendants which takes place on the Internet, a place of public accommodation.

58. Pursuant to N.Y. Exec. L. § 296(2)(a), "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to

any person on account of . . . disability . . . or that the patronage or custom thereat of any person of or purporting to . . . having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

59. Pursuant to N.Y. Exec. L. § 296(2)(c), discrimination includes "refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities."

60. As set forth above, Defendants discriminated against Plaintiff, on the basis of his disability, in violation of the NYSHRL.

61. The NYSHRL extends a cause of action and relief to "any person claiming to be aggrieved" by an unlawful discriminatory practice. N.Y. Exec. L. § 297(9).

62. Plaintiff is therefore entitled to injunctive relief, as well as compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged pursuant to N.Y. Exec. L. § 297(9).

## CLAIM III: VIOLATIONS OF THE NEW YORK CIVIL RIGHTS LAW

63. Plaintiff repeats and re-alleges all preceding paragraphs in support of the claim.

64. At all times relevant to the action, the New York Civil Rights Law, Article 4 of the New York Civil Rights Law § 40 *et seq.* has been in full force and effect and has applied to Defendants' conduct.

65. At all times relevant to the action, Plaintiff has had substantial impairments to the major life activities of hearing and speaking and has been a qualified individual with a disability within the meaning of New York Civil Rights Law § 40 *et seq.*.

66. The New York Civil Rights Law prohibits disability discrimination, as

contemplated by the NYSHRL. *See* N.Y. Civ. Rights Law §§ 40-c & 40-d; N.Y. Exec. Law § 296(2); *see also Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1997) ("Facts sufficient to sustain a cause of action under New York Executive Law section 296 will support a cause of action under section 40-c of the Civil Rights Law.").

67. As set forth above, Defendants discriminated against Plaintiff, on the basis of his disability, in violation of the NYCRL.

68. Based on Defendant's discrimination of Plaintiff, Defendants are liable "for each and every violation" of "a penalty of not less than one hundred dollars nor more than five hundred dollars." N.Y. Civ. Rights Law § 40-d.

69. "At or before the commencement of [this] action under this section," notice was provided to the New York Attorney General. N.Y. Civ. Rights Law § 40-d.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, the New York State Human Rights Law, and the New York Civil Rights Law.

B. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

C. Order Defendants:

   i. to develop, implement, promulgate, and comply with a policy requiring close captioning on all Viveport Infinity content whether the content is created, produced, and/or provided by Defendants.

   ii. to develop, implement, promulgate, and comply with a policy requiring an easy identification of captioned content and to affirmatively market the availability of closed captioning to deaf and hard of hearing individuals;.

   iii. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination of failing to provide reasonable accommodation and effective communication to Plaintiff or other deaf or hard of hearing individuals;

   iv. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual informs Defendants that there are captioning issues, Defendants will ensure that captioning is added to the content in a timely fashion;

   v. to train all of Defendants' employees, staff, and other agents on a regular basis about the rights of deaf or hard of hearing individuals under the ADA, the NYSHRL, and the NYCRL.

D.    Award to Plaintiff:

   i. Compensatory damages pursuant to the NYSHRL;

   ii. Statutory damages pursuant to the NYCRL;

   iii. Reasonable costs and attorneys' fees pursuant to the ADA;

   iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. Any and all other relief, including nominal damages, that this Court finds necessary and appropriate.

Dated: November 18, 2020

Respectfully submitted,

By:

Andrew Rozynski, Esq. (NY# 5054465)
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
*Attorneys for Plaintiff*