UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DYLAN PANARRA,

                          Plaintiff,

                                                                               Case # 6:20-CV-6991-FPG

v.

                                                                                DECISION AND ORDER

HTC CORPORATION;
HTC AMERICA, INC.; AND
HTC AMERICA CONTENT
SERVICES, INC.

                          Defendants.

## INTRODUCTION

Plaintiff Dylan Panarra ("Plaintiff"), who is profoundly deaf, claims that Defendants HTC Corporation and its subsidiaries HTC America, Inc., and HTC American Content Services, Inc. (collectively, "Defendants") are violating the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 121821 *et seq.*, as well as New York State law, by not offering captioning on the Virtual Reality ("VR") programming and content housed on their subscription service called "Viveport Infinity." ECF No. 39 at 1-2.

Defendants have moved to dismiss the operative compliant, Plaintiff's First Amended Complaint (the "FAC"), ECF No. 39, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 40. Defendants argue that Plaintiff has failed to state a claim because he has not plausibly alleged (1) that the ADA applies to Viveport Infinity as a place of "public accommodation" within the meaning of the statute; (2) that the ADA requires Viveport Infinity to alter its content; and (3) that the Defendants are sufficiently in control of the VR content to provide captioning. *See*

*generally* ECF No. 41.  Plaintiff responded in opposition to Defendants' motion, ECF No. 46, and Defendants replied.  ECF No. 47.

For the reasons set forth below, Defendants' motion to dismiss is DENIED.

## FACTUAL BACKGROUND

When courts evaluate motions to dismiss, they must accept the facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party.  *Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015).  Therefore, for the purposes of evaluating Defendants' motions, the facts below are taken from Plaintiff's FAC and are accepted as true.

Plaintiff is profoundly deaf and his hearing and speaking abilities are limited.  ECF No. 39 ¶ 6.  He is a "big fan" of video games and has played them "all his life."  *Id.* ¶ 20.  Plaintiff owns a device called an Oculus Rift which is a VR headset he uses to play VR video games and experience VR content.[1]  *Id.* ¶ 21.

Defendants "are one of the biggest electronics companies in the world" and they "operate an online VR subscription service called Viveport Infinity."  *Id.* ¶ 14.  Viveport Infinity is "the Netflix of VR" and offers "unlimited access to . . . thousands of VR content, including games, videos, and other apps and programs."  *Id.* ¶ 14-15.  Like Netflix, subscribers can access Viveport Inifinity's content from the comfort of their own homes.  ECF No. 39 ¶ 19.

In addition to access to "more than $10,000 worth of critically acclaimed titles," Viveport Infinity subscribers get "exclusive offers."  *Id.* ¶ 15.  Currently, Viveport Infinity is the only subscription-based platform offering VR content.  *Id.* ¶ 16.

---

[1] The FAC provides a comprehensive definition of Virtual Reality, citing the Encyclopedia Britannica.  ECF No. 39 ¶ 12 (quoting Henry E. Lowood, *Virtual Reality*, Encyclopedia Britannica (Sept. 2, 2020)), http://www.britannica.com/technology/virtual-reality.

Plaintiff's Oculus Rift headset is compatible with Viveport Infinity. *Id.* ¶ 21. He would like to subscribe to Viveport Infinity and use its content but has not done so "because Defendants have failed to provide closed captioning on its VR content." *Id.* ¶¶ 35-36. Closed captioning "is a system that displays text on video content," and, as such, it allows "deaf and hard of hearing individuals [to] have the opportunity to enjoy movies or videos by reading the captioned text." ECF No. ¶ 17. Since Plaintiff is deaf, he "requires closed captions to meaningfully access and understand any video content that has audio portions." *Id.* ¶ 20.

While some of Viveport Infinity's content does offer closed captioning, many titles in its catalog do not—unlike Netflix which "provides closed captions or subtitles for all its content." *Id.* ¶ 18. Viveport Infinity's failure to provide closed captioning renders much of its content inaccessible to Plaintiff and "other deaf and hard of hearing individuals." *Id.* ¶¶ 20, 23. Without closed captions, Plaintiff cannot "understand and follow the audio portions of various VR content" and he therefore "cannot fully and equally enjoy [Viveport Infinity's] services." *Id.* ¶ 24. This "increas[es] the sense of isolation and stigma" felt by Plaintiff and others like him as they "cannot enjoy VR and video games and cannot share the experience with their families or friends." ECF No. 39 ¶ 31. Furthermore, it prevents Plaintiff from participating in the "latest . . . trends and issues" in the VR game-playing community. *Id.* ¶ 33. This causes Plaintiff "frustration, anxiety, humiliation, loss of enjoyment, and anger." *Id.* ¶ 34.

Plaintiff filed the FAC on September 17, 2021, bringing three claims against Defendants:

1. Violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*;

2. Violations of the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290, *et seq.*; and

3. Violations of the New York Civil Rights Law ("NYCRL"), Article 4, § 40 *et seq.*

3

*Id.* at 7-12.

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, statutory damages, nominal damages, and reasonable costs and attorneys' fees. *Id.* at 12-14.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *In re Express Scripts Holding Co. Secs. Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, at *6 (S.D.N.Y. May 22, 2018) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). However, a court "is not required to credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alterations and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 65-66 (2d Cir. 2018) (citing *Iqbal*, 556 U.S. at 678) (citation and internal quotation marks omitted).

## DISCUSSION

**I.  ADA Claim**

Defendants present three main arguments each of which they assert warrants dismissal of Plaintiff's ADA claim. ECF No. 41 at 11-21. Principally, they are as follows: (1) Plaintiff fails to sufficiently allege that Viveport Infinity is a "place of public accommodation"; (2) Plaintiff fails to sufficiently allege that the ADA applies to Viveport Infinity's content; and (3) Plaintiff has not sufficiently alleged that Defendants have sufficient control over captioning the VR content. *Id.* The Court considers each of these arguments in turn below.

**A. Whether Plaintiff has Adequately Alleged that Viveport Infinity is a Place of Public Accommodation**

"The ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Wilson v. Fabric Cellar, Inc.*, No. 20-CV-244S, 2021 WL 2942354, at *5 (W.D.N.Y. July 13, 2021) (citation & internal quotation marks omitted).

Here, Plaintiff alleges violations of Title III. To state a claim under that section, a plaintiff must show that "(1) he or she is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against him or her by denying him or her a full and equal opportunity to enjoy the services defendants provide." *Id.* (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)).

The statute defines "public accommodation" as follows:

The following entities are considered public accommodations for purposes of this subchapter if the entities affect commerce—

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

>  (G) a terminal, depot, or other station used for specified public transportation;
>
>  (H) a museum, library, gallery, or other place of public display or collection;
>
>  (I) a park, zoo, amusement park, or other place of recreation;
>
>  (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
>  (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
>  (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

Defendants do not dispute that Plaintiff has adequately alleged the first element—that he is profoundly deaf and thus disabled within the meaning of the ADA. Defendants, however, argue that Plaintiff has failed to sufficiently allege that Viveport Infinity is a "place of public accommodation" for two principal reasons. ECF No.41 at 11-16. First, Defendants assert that Viveport Infinity "is software," and, "[t]o the extent that [it] is akin to an Internet website, the application of the ADA to stand-alone websites is not settled in the Second Circuit." *Id.* at 11. Defendants further note that Plaintiff has not alleged that Viveport Infinity "has any connection to a physical place." *Id.* In response, Plaintiff argues that the Court should find that Viveport Infinity is a "place of public accommodation" under the ADA "even if it has no physical structure where customers come to access its services." ECF No. 46 at 12.

Second, Defendants argue that, even if the ADA does apply to "stand-alone 'websites' without a connection to a physical place," Viveport Infinity must, but does not, fall within one of the twelve enumerated categories listed above to qualify as a place of "public accommodation." ECF No. 41 at 12-13. In response, Plaintiff contends that Defendants' argument is "premature at

the motion to dismiss stage because Plaintiff expressly pled that Viveport Infinity can be categorized as a 'place of exhibition and entertainment,' 'place of recreation,' sales or rental establishment,' or 'service establishments.'" ECF No. 46 at 13.

As the parties have indicated in their briefing, "[t]he Second Circuit has not yet considered a case in which a defendant operated no physical space open to the public but nevertheless provided goods or services to the public." *Scribd*, 97 F. Supp. 3d at 571. However, "a handful of district courts in the Second Circuit have interpreted an analogous case, *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), to imply that Title III extends to online fora offering goods and services." *Harty v. Nyack Motor Hotel Inc.*, No. 19-CV-1322, 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020) (collecting cases) (internal quotation marks omitted). *But see Winegard v. Newsday LLC*, No. 19-CV-04420, 2021 WL 3617522, at *6 (E.D.N.Y. Aug. 16, 2021) (concluding "that the text of the ADA's definition of 'public accommodation' clearly refers to physical places, and does not include stand-alone websites.").

This Court agrees with, and adopts, the statutory interpretation discussed at length in *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015). The plaintiff in *Scribd* was blind and sued based upon the defendant's failure to make its online digital library reading subscription services, offered on its website and via an app for mobile devices, available in audio format. *Id.* at 567. The defendant moved to dismiss, arguing that defendant "[did] not operate any physical location open to the public." In addressing this argument, the court considered the meaning of "public accommodation" under the statute and found that the text of the ADA is ambiguous, noting "the fact that reasonable jurists have reached different conclusions about how far Title III extends" underscored that ambiguity. *Id.* at 568-69.

Considering next the canons of statutory construction, the *Scribd* court concluded that adopting a narrow interpretation on this question by "[r]equiring a physical structure or some connection to a physical threshold would result in arbitrary treatment." *Id.* at 572-73. Next, the *Scribd* court turned to the ADA's legislative history and found that it required a resolution of the ambiguity in the plaintiff's favor. *Id.* at 573. The court convincingly reasoned that because "the Internet plays such a critical role in the personal and professional lives of Americans, excluding disabled persons from access to covered entities that use it as their principal means of reaching the public would defeat the purpose of this important civil rights legislation." *Id.* at 575.

The *Scribd* court thus declined to adopt a statutory interpretation such as would "exclud[e] businesses that sell services through the Internet from the ADA" because such an interpretation would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Id.* at 576.

That logic applies with equal force to this case. Accordingly, the Court adopts the statutory interpretation discussed in *Scribd* and declines to dismiss Plaintiff's ADA claim on the grounds that he fails to "tie Viveport Infinity to any physical location or facility owned, leased, or operated by [Defendants], nor . . . allege that Viveport Infinity's VR streaming services are connected to . . . physical storefronts," as Defendants urge.[2] *See* ECF No. 41 at 12.

---

[2] The Court recognizes that "[a]bsent some limiting principle," a blanket ruling "that *every* website is a 'place of public accommodation' . . . would mean that every operator of a website—every blogger, vlogger, and the like—must provide closed captioning and any other accommodation required by the ADA." *Winegard*, 2021 WL 3617522, at *8 n.17 (emphasis in original). Thus, the Court's conclusion should not be read as a broad pronouncement.

Rather, the Court's ruling, under *Scribd*, is limited to the facts in this case, wherein the Court is presented with a service akin to Neflix, *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 199 (D. Mass. 2012) (service for streaming movie and television programming), or Scribd, *Scribd*, 97 F. Supp. at 567 (service for accessing collection of "e-books, academic papers, legal filings, and other user-uploaded digital documents").

8

The Court must now consider whether the services Defendants offer "properly fall within any of the general categories of public accommodations listed in the statute." *See Scribd*, 97 F. Supp. at 576. Here, Plaintiff has alleged in the FAC that Defendants' services fall within at least one of the following categories: "place of exhibition or entertainment," a "sales or rental establishment," a "service establishment." ECF No. 39 ¶ 40 (citing 42 U.S.C. § 12181(7)). Based on Plaintiff's allegations, together with his arguments in support, the Court finds that he has sufficiently alleged at this juncture that Defendants "own[ ], lease[ ], or operate[ ] a place of public accommodation." *See Scribd*, 97 F. Supp. at 576; *see also Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 201 (D. Mass. 2012) (finding that video-streaming website "may qualify as: a 'service establishment' in that it provides customers with the ability to stream video programming through the internet; a 'place of exhibition or entertainment' in that it displays movies, television programming, and other content; and a 'rental establishment' in that it engages customers to pay for the rental of video programming").

Accordingly, Defendants' motion to dismiss Plaintiff's ADA claim based upon the arguments that Plaintiff has failed to adequately allege that Viveport Infinity is a "place of public accommodation" and that he has failed to allege one of the twelve enumerated categories is DENIED.

### B. Whether the ADA Applies to Viveport Infinity's Content

Next, Defendants argue that Plaintiff's ADA claim fails because Plaintiff does not allege any barriers to accessing Viveport Infinity; rather, "Plaintiff's allegations refer to the VR content made available through Viveport Infinity, not to the platform itself." ECF No. 41 at 16. Thus, Defendants contend, because "VR content on Viveport Infinity is offered on a title-by-title basis—just like goods that are offered at a store," the ADA does not require alteration of its content in the

same way that it "does not require retailers to alter their inventory for any particular customer." ECF No. 41 at 19.  In response, Plaintiff argues that the issue in this case is one of *access* to content and that the cases relied on by Defendants "are inapposite because they involve altering substantive content that would change the nature of the retailer's business." ECF No. 46 at 14-15.

"The ADA regulates access to goods and services but not the kind of goods and services offered by the regulated entity." *Mendez v. Outback Steakhouse of Florida, LLC*, No. 19-CV-9858, 2020 WL 4273820, at *3 (S.D.N.Y. July 23, 2020).

> The Department of Justice's ("DOJ") implementing regulations clearly state that Title III of the ADA "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a).  Accessible or special goods include, for example, "Brailled versions of books, books on audio cassettes, closed-captioned video tapes, special sizes or lines of clothing, and special foods to meet particular dietary needs." *Id.* § 36.307(c).  The rationale is that "[t]he purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided." 28 C.F.R. pt. 36, App'x C.

*Thorne v. Boston Market Corp.*, No. 19-CV-9932, 2020 WL 3504178, at *8 (S.D.N.Y. June 29, 2020).  Thus, as an example, courts have rejected ADA claims where blind plaintiffs sought to require braille on gift cards because "[g]ift cards are plainly the type of goods a business normally offers that need not be made accessible pursuant to Title III." *Mendez*, 2020 WL 4273820, at *3 (collecting cases).

However, "[e]ven for goods and services, . . . the ADA requires that regulated entities 'ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the *absence of auxiliary aids and services*, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good [or] service . . . or would result in an undue burden.'" *Id.* (quoting 42 U.S.C. § 12182(b)(2)(A)(iii)) (emphasis added).

10

Here, Plaintiff argues that, rather than the alteration of a good or service, this case is about the provision of "auxiliary aids that would allow individuals with disabilities to access the same content as individuals without disabilities." ECF No. 46 at 15.  Where equal access is in question, "the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication."  *Mendez*, 2020 WL 4273820, at *4 (quoting 28 C.F.R. § 36.303(c)(1)(ii)) (internal quotation marks omitted).  While "[n]o one specific form of auxiliary aid is mandated," "to make out a claim under this theory, [the plaintiff] must plead facts indicating that [the defendant] refused her *any* means of 'effective communication' with respect to [the goods or services]" in question.  *Id.* (emphasis in original).

Here, Plaintiff has alleged the following: that he is profoundly deaf and his hearing and speaking abilities are limited; that Viveport Infinity is currently the only subscription-based platform offering VR content; that Defendants have failed to provide closed captioning on its VR content; and that Viveport Infinity's failure to provide closed captioning renders much of its content inaccessible to Plaintiff and other deaf and hard of hearing individuals; and that, without closed captions, Plaintiff cannot understand and follow the audio portions of various VR content and he therefore cannot fully and equally enjoy Viveport Infinity's services.  ECF No. 39 ¶¶ 6, 16, 20, 23-24, 35-36.

These facts "give rise to the plausible inference that [Defendants] did not offer *any* legally sufficient auxiliary aids for [Viveport Infinity]."  *Cf. Mendez*, 2020 WL 4273820, at *4.  That is sufficient to state a claim at the motion to dismiss stage on this theory and, accordingly, Defendants' motion to dismiss based upon this argument is DENIED.

### C. Whether Plaintiff has Sufficiently Alleged "Control"

Finally, with respect to the ADA claim, Defendants argue that Plaintiff "fails to meet his burden to plausibly allege that [Defendants] [have] sufficient control over captioning the VR content." ECF No. 41 at 19. Defendants contend that, "[t]o plead a violation of the ADA, Plaintiff must allege that [Defendants] 'own[ ], lease[ ] (or lease[ ] to), or operate[ ]' the programming that [Defendants] allegedly failed to caption." *Id.*

In the FAC, Plaintiff alleges that "Defendants operate an online VR subscription service called Viveport Infinity, often described as the Netflix of VR"; that "Defendants own, lease, and/or operate a place of public accommodation"; and that "Defendants have the ability to caption all of Viveport Infinity content just like Netflix captions all of its content." ECF No. 39 ¶¶ 14, 26, 40. At the motion to dismiss stage, that is sufficient to satisfy this element. *See Netflix*, 869 F. Supp. 2d at 202 ("Plaintiffs have pled that Defendant owns and operates the Watch Instantly web site—a place of public accommodation—and that Defendant has stated that it is working to provide captioning for the content on Watch Instantly. These allegations are sufficient at this stage of the litigation to establish that Defendant 'owns, leases [ ], or operates' a place of public accommodation for purposes of the ADA.") (internal citation omitted).

Defendants further contend that the FAC lacks sufficient facts "to support [the] conclusion that [Defendants] control[ ] or operate[ ] the VR content, or that [Defendants] have the necessary intellectual property ownership or permission from the owners of the VR content to caption the content, or sufficient control to require them to do so." ECF No. 41 at 21. This argument is unavailing because it is an issue for discovery and a question not properly before the Court at this juncture. *See Netflix*, 869 F. Supp. 2d at 202-03 (finding that question of the defendant's power to provide captioning due to copyright issues was "not properly before the court" at the motion to

dismiss stage but that the "issue may be revisited on a motion for summary judgment"). Accordingly, Defendants' motion to dismiss based upon this argument is DENIED.

## II. State Law Claims

Defendants move to dismiss Plaintiff's NYSHRL and NYCRL claims, arguing that dismissal of Plaintiff's ADA claim necessitates dismissal of the state law claims because the same standard applies. *See* ECF No. 41 at 21-22; ECF No. 47 at 14. Indeed, Plaintiff's NYSHRL and NYCRL claims are "governed by the same legal standards as govern federal ADA claims." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). However, as explained above, Plaintiff's ADA claims pass muster under Federal Rule of Civil Procedure 12(b)(6). Thus, Plaintiff's state law claims "survive[ ] . . . on the same basis as his ADA claim." *Id.* Defendants' motion to dismiss Plaintiff's NYSHRL and NYCRL claims is therefore DENIED.

## CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss for failure to state a claim, ECF No. 40, is DENIED.

IT IS SO ORDERED.

Dated: April 15, 2022
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York